Our third and final case this morning, 23-4423, United States v. Tostado, Mr. Vetrano. Good morning. May it please the Court, Sean Vetrano on behalf of Amanda Marie Tostado. It's now been five and a half years since this Court issued its opinion in Rogers. The District Court in this case committed two Rogers errors in Ms. Tostado's case. First, the District Court imposed a warrantless search condition in the judgment that is substantially broader than the condition she announced at sentencing. Second, the District Court failed to properly incorporate the standard conditions in the standing order in the Eastern District of North Carolina. Are you familiar with our recent decision in NG? NG, yes. What's your position on that? NG is distinguishable. The Court in that case, that's a Judge Bennett case out of the District of Maryland. Judge Bennett explicitly incorporated by telling each of the three defendants in that case, you are subject to or the Court is imposing the standard conditions of supervision. In this case, there was no explicit incorporation. What did the Court say here? The Court said here that she made reference, she made specific reference, and I'll find the joint appendix page for you, Your Honor. She made specific reference to the standing order, but there's a lot of language around the imposition of the conditions of supervised release. I can talk either about the warrantless search condition or I can talk about... How is that different again from NG? There the Court mentioned the standard conditions, but then said some stuff around it, and we said that's not a problem. In NG, the Court explicitly adopted the standard conditions that governed in that district, and then the Court went on to explain in a summary fashion... Here the Court said the next set of conditions are standard conditions. They're adopted in this district in an order that's been of record for a couple of years now. That's correct. Right? So she's saying these are standard, they've been adopted, and necessarily apply to everybody. So she ticks the first box in that the standing order in the Eastern District says you can make reference, you can incorporate these things if you refer to the standard conditions of supervision that have been adopted in the Eastern District of Carolina. She ticks that box, but where she made things confusing at sentencing inadvertently is when she's talking about the conditions as a set, and she's explicitly describing specific conditions. Isn't that exactly what happened in NG, that the Court described some of them but not all of them? The Court said, I'm adopting the conditions, I'm adopting the standard conditions in this district, and then it went on to summarize two conditions it thought were important. Did you object, or did whoever was there object? This is something, some Rogers errors, there's no way you could have objected. The Court says nothing at sentencing, and then a condition shows up in the judgment that you didn't know about. You couldn't have objected. But here, if the argument is, well, this was a little confusing because there are standard conditions that apply to everyone. She said she was applying those, but then she described only some of them. That seems like that would require an objection if anyone's confused in reality. Well, I'm not sure if it does, because there wouldn't have been a reason to object if the defendant was satisfied with the five conditions that she pronounced, thinking that, well, she's not adopting all 13 of the conditions in the standing order. So where there's an issue is this judgment now contains all of the language, all of the conditions in the standing order. When what she was introducing at sentencing orally is when you get out of prison, there are a number of conditions that will apply. This is on JA 55. And we'll take them in order. I mean, I noticed, I mean, what the district court said here, and perhaps it's not surprising because it's the same district court judge, seems almost verbatim what the district judge said in Bullis that we said was not adequate. Well, and even in NG, the court recognizes there are certain... That was a friendly question. I agree, Judge Heitens. I agree. It's identical to Bullis. Bullis is the case that should govern both of the errors in this case. Can I ask you, so you just made a point about your client or the defense having no incentive to object when the judge explains conditions that are less comprehensive than the ones in the standing order. That makes sense. But what about the issue with respect to the search condition where she suggests a more expansive search condition? Don't you have an obligation at that point to object? I think that, well, the search condition that the court imposed orally at sentencing is narrower than the condition that was in the judgment. So she wouldn't have had an opportunity to object until she actually saw the judgment. She was on notice because the government is certainly going to say she's on notice because of what's written in the case. And just so I understand, the two objections to the search condition are your allegation. I'm not saying I agree with this. I'm saying this is your claim, that it's broader in two respects. One is it's not the searches part is not limited to law enforcement person. No, it's not limited to the probation officer but now includes law enforcement. That's difference one. And then difference two is what I would refer to the question of when is the probation officer allowed to search someone for a reason that isn't suspicion of violation of the law or the supervised release conditions. And when I look at what the district court said orally, it seems like the answer is only for safety reasons. And when I look at the written judgment, it's any lawful authority. Those are the two things that you think are different? Well, there are several things that are different. In the brief, those are certainly the two things that I have. So the question is who can search me and when can someone search me for reasons that aren't suspicion that I'm violating the law? Well, I mean there are multiple problems. There are multiple what I would call material differences between what the judgment contains and what was orally pronounced. And they relate to all of the conditions of the warrantless searches. Who can search? When can search? When can she be searched? What can be searched? And under what circumstances? And so there are problems all the way through the condition that is imposed in the judgment. So here what she said at sentencing was you are subject to warrantless searches. But then, of course, the judgment goes on and enumerates a long list of places that can be searched, including any place that she would be occupying, any vehicle that she's riding in. And that, of course, is the subject of cases that are already coming up to this court in other matters. The inclusion of the word any property, house, residence, vehicle, papers, computer, other electronic communication or data storage devices. This court can take judicial notice of its own docket. I mean that's the issue in Hartman 244431 and Gonzales. Is it contradictory though? I know our Rogers cases are incredibly clear and easy to follow, but we have this doctrine that if the conditions aren't contradictory, a written judgment can clarify an ambiguity, right? And the court didn't say you're going to have to agree to searches of your person, or she didn't say, like, you can be searched. She said you're going to have to agree to warrantless searches. You're agreeing to warrantless searches, which doesn't suggest in English that they're only searches of you. It's that you're agreeing to warrantless searches of something. Arguably that's an ambiguity that is then clarified by the written judgment. So how do we deal with that? That's a huge ambiguity. I think, I mean, there is a line somewhere between clarifying conditions that were orally announced and adding new conditions. And I think that this case falls pretty squarely on the line of adding conditions. Well, look, I do have a question about adding new conditions because did Ms. Tostado waive her right to be present for the announcement of this condition? No, I don't think so. When she agreed in her plea agreement that she would be bound by any warrantless search condition that appeared in the written judgment? No, I don't read the plea agreement to be a waiver of her right to… To an oral pronouncement. To oral pronouncement or even the right to challenge the discrepancy. Well, maybe it's not a waiver, but is it harmless because she's now contractually bound even if it wasn't pronounced orally? It's not harmless because the error affected her substantial rights. In Rogers and Singletary, the court made absolutely clear that conditions in the judgment that were not announced orally at sentencing are a nullity. They're void. So now she's subject to conviction. You may feel like you imposed these, but you didn't actually impose them. You didn't impose them. They were never actually imposed. Well, she imposed something, right? This is not a situation where nothing was said and then things showed up in the judgment, right? Correct. So your argument on this has to be, well, she's only subject to the supervised release condition of… It's necessary. …warrantless searches where there's suspicion you're breaking the law or if the probation officer, for example, a safety reason, there's no suspicion and you'll agree to that. Yeah. Your argument has to be that's what binds my client going forward. I think that that's correct, yes. I think that that's correct. Now, of course, on plenary resentencing, the court can do whatever it wants to do. It can modify that condition, strike that condition entirely or more narrowly tailor it to the circumstances of the case. But, yes, the court said to Ms. Tostado, it's necessary for you to submit to warrantless searches, and it described the specific circumstances under which those searches could occur. So it described two reasonable suspicion circumstances, right? Reasonable suspicion she's breaking the law or violating a condition of her supervised release, and in the absence of any suspicion, the court said for safety issues, if her probation officer needs to search. Well, as Judge Heitens noted, the written judgment, this is, I guess, where the easy Rogers error appears in the judgment is because now we've got language in the judgment that says that she's subject to these warrantless searches within any of the lawful functions that her probation officer is trying to perform. So it's not a public safety limitation. It's a very broad search exception. For example, the probation officer can turn up at her apartment for a routine check, and the language in the judgment authorizes the probation officer to go through absolutely everything in the apartment. How does the plea agreement and its discussion of the standard conditions interact with what we've been talking about here? I mean, there she agreed, I will be subject to the standard conditions if they show up in the written judgment, and they did, and so that shows she's clearly aware of the standard conditions, and then the court announced standard conditions orally and then included them in the written judgment. The court made reference to the standard conditions of supervision that are in the standing order but did not say you are subject to all 13 of the standard conditions. So there's two issues. You're talking about totally disregarding the plea agreement. Did the court properly incorporate? And it's actually different than Bullis, right, because there the court just said there are some standard conditions in this district, whereas here the court specifically referenced the standing conditions order and said it's incorporated, right? So those are different. But what I'm asking about is about the plea agreement. Your client agreed as a matter of contract to abide by the standard conditions if they show up in the written judgment, and they do. But the plea agreement doesn't…  Does the plea agreement say written judgment, or does it say judgment? It says as long as those conditions are included in the judgment. And doesn't Singletary say things that show up in the written document for the first time are not part of the judgment? Correct. Void.  So is that your argument now? Well, yes. I'll add that to your brief, but I didn't see it. Well, look, the harm occurred when she's sentenced in absentia to all of this additional language in the written judgment. So that's not harmless error, and the plea agreement doesn't bind the district court. The plea agreement is not the sentence. The district court imposes the sentence. Right. But the plea agreement is what she agrees to do, and it at least gives us reason to think she knows about these conditions. She knows what they are. She knows that she will be subject to them. And if there's any confusion, she should ask. She knows from the plea agreement that if the district court incorporates or adopts the conditions in the standing order in its judgment, that she is to be bound by those things. If the district court has an incomplete or a defective incorporation, then she's not subject to that stuff under the language of her plea agreement. You know, there's a lot, I think, to expect of a defendant, although there is a lawyer there, which is why I asked you about counsel's obligations early on with respect to piping up. And I had the order of the search conditions reversed, and you made the good point that the more severe condition didn't pop up until later. But this is a defendant . . . I don't remember whether this defendant had a prior record, but maybe his first or her first time in court. And she's hearing a judge explaining conditions of supervision, and to the extent that she's paying attention, she's hearing the judge announce conditions that are different from what she may have signed on to in a pretrial agreement, if she ever remembered that. It seems to me that we should hold judges accountable for these deviations because a defendant is most likely to rely on the judge to accurately explain what it is that he or she is agreeing to. Well, I think this court has made it very easy for judges to do what they need to do at sentencing. You know, the court has said, you don't even have to read all of the conditions that you're about to impose. You can incorporate this stuff by reference. You just have to do it explicitly. I think the word explicitly is important in a run. But that's exactly what you're trying to ding the district court for here, is she incorporated the standard conditions by reference and didn't read them all. And you're saying, well, she read some of them, not all of them. That is a gotcha. We have to send it back. I see I'm out of time. Please answer. I'm not trying to ding the district court for not reading all of the conditions. What my argument is on it is that she created an ambiguity by saying, Ms. Tostado, the next set of conditions that I'm about to impose on you are standard conditions that we've adopted in this district by an order that's been of record for some time now. And then she goes and she enumerates only five of them. And then at the end of the proceeding, she summarizes, essentially, and she says, I think that's it. So I think that what she has inadvertently done in this case is muddied the waters and she's created confusion in the defendant's mind about what is the sentence. And that's exactly what Bullis recognizes. And she was represented by counsel, right? Ms. Tostado? Yes. Yes, she was represented by counsel. I suppose if we agree with you with respect to the search condition, that that clearly is a Rogers violation just because of the strict inconsistency between those, this other issue really doesn't matter because this case is going to go back for resentencing anyway. It will, but hopefully the court's opinion will sort of remind the district court that Well, we might remind her, but I don't know that we need to ding her as my colleague.  Agreed. All right. Thank you. All right. May it please the court, Kate Englander on behalf of the United States. And I'd like to just jump right in and talk about the ways that I do think that this case, the standard condition incorporation in this case is different than Bullis. So first, in Bullis, what the district court said is there are standard conditions in this district. She then went on to do a similar set of examples is what she did. I mean, the district court, like we're really playing some of the hits because some of the language is almost verbatim to what the district court judge said in Bullis. Well, I think it's, I think it's different in an important way. So here what the district court, there what the district court said is there are standard conditions. Let me give some examples. And at the end, she gives this sort of half set in standard conditions you'll comply with. Right. And so we know from Bullis that that is not enough. Correct. I understand that, Your Honor. But I think there's, the way she explains it here is more clear that she is incorporating this specific set of standard conditions. She says, before she even gets to the standard conditions specifically on 55, she says when you get out of prison, there are a number of conditions that will apply and will take them in order. And then she says the next set of standard conditions, sorry, the next set of conditions are standard conditions. They're adopted in this district in an order that's been a record a couple of years now. I do think that is a more clear incorporation of the standard conditions than what she did in Bullis. The judge could have stopped right there. Well, and I think part of that gets to this point, Your Honor. What the judge is trying to do here is actually connect with the defendant. Well, but if you're going to do it, you need to do it right, I guess is the point. So, for example, in, I can't pronounce this case, NJI, the court says the same, something kind of similar, and then it says they're mandatory and I need to carefully summarize them for you. The court makes clear in that case that what I'm about to do now is a summary of some of the highlighted most important ones. But in this case, I mean, I just say this. If I was in the courtroom, I would not understand, is this an exclusive list or not? Because there's a way you could read it, that it's all of them and I'm going to give you some highlights, but it could also be the things I'm now telling you are the ones I'm summarizing and there aren't any others. I don't think that this case is very different than what the court, and I'm also not going to pronounce it correctly, but the NJI case. Well, except in that case, the court said, first words out of its mouth, you shall comply with all the mandatory and standard conditions of supervised release. And so, by saying all, it makes very clear, it's everything that's in that document. And what I'm going to do now, as the court also said, I'm going to summarize some of them. But in this case, the court says the standardized conditions and then it proceeds to only talk about a couple of them. That seems like a really big difference to me. And she references the order specifically, right? She references the order specifically. The order that's been in this district for a couple of years now, right? And she has an attorney. The defendant has an attorney who knows this order and knows everything that's in it, right? And they've already talked about it ahead of time because he's a good attorney. Why should this be different from NJI in that respect? Right, and I don't think it is different from NJI in that respect. And the other factor, I think, that's playing in the background here that is relevant is that the defendant has already agreed to abide by these same standard conditions in her plea agreement. They have been forecast for her in the PSR. Okay, but now, okay, hold on. We've said the PSR is 1,000% irrelevant. We have a published opinion. I don't know why you're making this PSR argument when we've literally said that does not matter. Well, I think it's relevant to what the… Do you disagree that this court has said the fact that it was in the PSR makes no difference to whether there's a Rogers error? I agree that… So why are we still arguing that it makes a difference? I agree that the fact that it's in the PSR alone is not enough to have it be incorporated under Rogers. But I do think it's relevant to what the understanding of the parties in the courtroom was as they're discussing the standard conditions. Everyone is reading off the same sheet of music here. There's a PSR that includes all 13 of these conditions. The defendant has already agreed to abide by them as part of her plea agreement. And the plea agreement specifically references the standard conditions in the Eastern District of North Carolina with the… Yeah, so the prosecutor's office has a problem where district judges are constantly violating Rogers and you're trying to immunize those Rogers errors from appellate review. That's the only reasonable conclusion I can draw from the existence of this provision. I think we're trying to make sure that the defendant is clear that the standard conditions will apply to them. And when the court then references those standard conditions, it's not a surprise when they show up in the judgment because, again, there was a context going into the sentencing that these standard conditions will apply. Yeah, but this is one of, like, three different parts of this argument that you make in, like, two pages at the end of your brief that runs smack into Singletary in ways that you simply don't deal with. I mean, would you like me to start reading sentences from Singletary that says your entire conception of Rogers errors is wrong? Your Honor, I want to be clear that we're talking about the plea agreement, I think, in two different contexts here. I think first is I don't think this court has to look at what the judge says in sentencing in a complete vacuum. I think the fact that the parties have in the judge have an understanding of what everyone's talking about. Okay, let's start. Has this court, how many cases would you say this court has reversed based on Rogers errors in the last five years? Your Honor, I could not even have a guess. Have we ever once said or suggested that a Rogers error can be harmless? No, Your Honor. And so you're making, like, a two-paragraph argument that we should adopt a rule that could blow a hole in about several dozen Rogers cases we've already cited. I think the facts of this case are unique. This is, to my knowledge, the first time that the government's ever raised where the defendant had a specific provision in her plea agreement that said that she would abide by the plea agreement. But this is where you're running straight into Rogers, because I'll start reading quotes from Singletary if you'd like. Literally, the theory of Rogers adopted in Singletary is that things that show up in the written judgment that were not said orally are not part of the judgment. They were never imposed. They are legal nullities. And so I don't even know how you can... How can she appeal if she wasn't... I have a jurisdictional question if these are legal nullities. If these weren't imposed, then what is the defendant appealing? So I want to back up just a little bit. We're not arguing that the defendant has waived her right to bring this claim. What we're saying is that in her case, the error should be disregarded because she has agreed to abide by these conditions, regardless of whether they appear in the judgment... I'm sorry, if they appear in the judgment, regardless of whether they were orally pronounced at sentencing. That's the argument. I understand it's a novel argument, and I understand... I don't think it flies in the face of Singletary. I think it deals with a slightly different issue, but I understand... Again, your theory is that she was sent... That she, in some sense, was really sentenced to these. And the whole ratio dissent I have Singletary is that no, she wasn't. That's how Singletary gets around the appeal waiver. That's how other Rogers cases get around the plain error standard of review. Every time the government makes an argument, this is forfeited or it's covered by the appeal waiver, the move of all these Rogers... Now, whether this is right or wrong, fair question, but the theory of these cases is that didn't really happen. These are not actual conditions. And so she agrees to abide by all the provisions in the judgment. The provisions in the judgment under Singletary are what the diss report set out loud, not what's in the written judgment. I understand your point. I think what I'm trying to get across is that in a normal case, a Rogers error isn't apparent until the judgment appears. And that's why Singletary says what it says about appellate waivers. This case is different by virtue of the fact that she did agree to abide by those conditions before any of this, before the judgment, before the sentencing. I understand that it's a novel argument, but I do think, regardless of the court's view of the position, our position on harmlessness, the fact that it was in the PSR, and I understand that being in the PSR alone is not enough, but the fact that it's in the PSR, the fact that it is in the plea agreement, means that when the court is talking to the defendant about her conditions, everyone is reading off the same sheet of music. Everyone is operating under the understanding that these are... Well, apparently, except for the judge, who's reading a different sheet of music. I think the judge, frankly, I think the judge here is trying very hard to connect with the defendant. I think district judges are often . . . No, I have great respect for Judge Flanagan. I'm not criticizing her, but on the other hand, I think it's a little unfair for, and I'm not suggesting that you're doing this, that suggests that somehow this is hard. I mean, it's just not, to follow . . . What's hard is actually arriving at a sentence in a case involving another human being sitting across from you. That's hard, but the actual mechanics of getting to that result, that's not hard. Just follow the script. I think the judge is often in the position of, this is the last time, hopefully this is the last time I will ever see this defendant. But if I see them again, it's going to be in the context in which they have violated a condition of supervisory release. So let me try to get across to them what I think is really important that they need to understand. Yeah, and one thing that's really important that you . . . I mean, we've already given an enormous amount of leeway by letting district courts adopt conditions by reference. I mean, what Roger says, what you're really supposed to do when you're telling another human being how their liberty is going to be restricted going forward, is that you're supposed to tell them exactly how their liberty is going to be restricted going forward. Like, the best version would be to look the defendant in the eye and literally tell him every condition of supervisory release. But that, maybe especially there's these standard conditions. So what our Rogers cases say, look, if you have a set of standard conditions, you can just say that. Which is itself already a departure and concession from, you should look the defendant in the eye and tell them all the ways that his liberty is going to be restricted. But then if you're going to do that, it's really not that hard to say, you will follow all the standard conditions imposed in this district. Let me summarize the ones that tend to bring people . . . But like, you need to make really clear, if you're just going to highlight the highlights, that what we're doing is highlighting the highlights, not listing all of them. It doesn't seem like it's that hard. Your Honor, and I do think that there is an importance to incorporation. I think, specifically, I would look . . . This court referenced the Diggles case, which is a Fifth Circuit case, in Rogers extensively. One of the things Diggles said is, it's actually not that effective to have a judge sort of robotically read a list of conditions to somebody. That has all the effect of, you know, the pharmaceutical ads, the laundry list at the end of the pharmaceutical ads, in terms of just going right over the defendant's head. I think what the district court did here, what I think she did here, is she said, these are the conditions that will apply. Here's what I tell defendants about these conditions. And then she goes on to explain it. Would it have been more clear if she had just said, I impose the standard conditions of supervised release in the Eastern District of North Carolina under 21-S05? That would look better on a cold record. But I don't think it would give the defendant a better understanding of what the defendant was supposed to comply with than what this district court did here. Okay, so let's talk about the other conditions. Because as the Chief pointed out, if we think that the search condition is invalid, none of this really matters. I genuinely . . . In the government's view, when is the probation officer allowed to search this person for reasons that don't involve a reasonable suspicion of violating the law? Because I read the oral pronouncement as saying one thing, and the written judgment is saying something way broader. So I think in the lawful discharge of the officer's supervision . . . Which is way broader than officer safety. Well, I do think the district court was clear that the safety was . . . She said, for example. Okay. What she's saying is there are circumstances under which the probation officer may also search you. Yeah, reasonable suspicion . . . I'll read exactly what the district court says. Reasonable suspicion to think that you're breaking the law, so that's a committing a crime, or violating supervised release, which is a . . . And this is verbatim what the district court judge says. Or if the probation officer, sometimes for safety reasons, no suspicion, but safety issues, and they have to conduct a search, and you'll agree to that. I think there was a for example that was left out. There's a for example in there. Sorry, I meant to read the for example. But the court identifies no other examples. That's the only example that's given, right? Right, and then what Roger says is that the written judgment can clarify any vagueness in the oral pronouncement, which is what the district court did in the judgment. And again, I do think it's important context. I know that having it in the PSR alone is certainly not enough, but I think it's important context that it is in the PSR. The defendant says that she has read the condition in the PSR. We're just . . . She says that she has read the PSR. But we're still fighting the legal melodies point. You're still suggesting that the real conditions are the ones in the written judgment, and the singletary says the real conditions are what the district court said out loud at the hearing. What I'm saying is the district court said, I'm going to impose a warrantless search condition. She explained some things about that condition, but that the judgment clarified exactly what the contours of that were, and that is permissible under Rogers. But I think the point that I'm making is really that it's . . . When the defendant says she was surprised to learn that she was subject to it in these places or at these times, that's not consistent with the record, because that condition, exactly as it appears in her judgment, did appear in the PSR, which she did say she'd read. Again, she is being advised by counsel. So that goes, I think, to the point that I don't think she's . . . She's not surprised. But that assumes that the only purpose of the Rogers rule is notice to the defendant, and I don't know where that comes from. It's not, Your Honor. There are three purposes to the Rogers rule under Rogers, right? There's the right to be present when you're sentenced . . . which can't be fixed by giving you notice ahead of time.  Notice and opportunity to object in the second, and then the third being ensuring an individualized assessment, both for purposes of the appeal record and also just . . . that the judge is making an individualized assessment. And I think if you look at this case, each one of those purposes was satisfied at sentencing. The defendant was advised that she would be subject to a warrantless third condition. No, because she wasn't actually . . . In your view, she was sentenced to conditions that she was not present when they were announced. I think she was present when she was . . . The judge said, you're going to be subject to a warrantless search condition. She explained some about the contours of that. And then, the full extent of that is clarified in the written judgment, which Rogers says is okay. She's not surprised. There's no additional condition embedded in that warrantless search. Like, in the Mathis case, right, there's a warrantless search condition that then includes a requirement that the defendant has to advise anyone the defendant is living with that they are also going to be subject to this search. That part of it was only in the written judgment and not orally pronounced. And what this court said is, that's an additional condition. That's an additional obligation on the defendant that was not explained orally. Here, that's not the situation. The situation is, the judge says, warrantless search. She explains some about it. It would have been more clear if it had been read, but she didn't. But then, what appears is just a clarification on that vague . . . by adding a whole category of stuff you never mentioned. I mean, clarification to me is, you say a word, that word is sort of ambiguous. It's not really clear what that word means. But here, again, if the question the defendant faces is, when can the probation officer search me for reasons that don't involve suspicion of breaking the law? The only example, I agree, the judge phrased it by example, but the only example the judge gave was safety. And there's a whole lot of things that probation officers do as part of their lawful authority. They're not about safety. So, I don't think that's clarification. That's adding an additional set of circumstances that were never mentioned orally. I disagree, because I think it's clear that it's an example. And again, the full language is known to everyone who's in the courtroom that day, before the defendant even arrives, right? So, all of the parties . . . Well, hold up. The district court is not bound by the party's little plea agreement about what the district court's going to do, right? And I'm not talking about the plea agreement. I'm saying the PSR, the exact language . . . The district court is not bound by what the probation officer recommends in the PSR. You're absolutely correct. Not bound by that. But when she imposes a warrantless search condition that references the same sort of general categories that are in that condition, I do think that it's appropriate for that to be clarified in the written judgment. And I don't think that what the district court did here was add or broaden or do anything materially inconsistent with what she said she was going to do at sentencing. And, Your Honors, I don't believe I have any . . . Unless there are any more questions, I'll take my time. Thank you very much. We'd ask this court to affirm. Thank you.  I don't have very much to add. The court is certainly . . . Do you agree with the understanding that Rogers announced that what is said orally is the judgment? Rogers and Singletary, yes. And so anything that's added beyond the oral pronouncement is a nullity? Anything that's added that is a material deviation. There are some things that the court will add or clarify or explain that are not material, and those are not going to give rise to a Rogers error. The court has granted leeway for that. So Ms. Tostado has not been sentenced to the things that are in the written judgment. She's not been sentenced to the conditions in the judgment that were not orally announced or properly incorporated. Right. Those are nullities. She's only been sentenced to the conditions that were announced in court. Yes. How has she been injured by the nullities that she's not sentenced to? She's been injured because the court entered a written judgment. But they don't actually apply to her, right? She's been sentenced to what was announced in court. How does what was announced in court injure her? What's the argument that she needs to be resentenced because what was announced in court is injuring her? And she needs relief from those conditions. She's not objecting to, she's not contesting what was announced in court. What she's contesting is what was said. I guess that just leaves me wondering why we're here. You know, Rogers doesn't address this, and our court has never addressed this, I don't think. But the nullities premise, which you're correct is the basis for this case law, leaves us with sort of a non-injured appellant, right? They're appealing from something that didn't happen to them and can't hurt them and doesn't apply to them and appears to cause them no injury because they were never actually sentenced to it. Well, but it does cause her injury when a probation officer acting in reliance on their written judgment goes to— We have years of case law now. If they try to revoke her supervision based on that, the answer is clear in district court. Your Honor, she was never sentenced to this, right? It's a nullity. I'm not sure about that, Judge Rushing. Well, wait. I mean, what's the injury, I guess, is the question. What's the hook? Why are we here? I mean, all I can tell you, the hook is she's appealing conditions of supervision that were listed in a judgment that the court did not correctly pronounce. But that's not the judgment that governs, right? We've said that it's what's announced in court. And so how does it hurt her? Because what's going to be enforced, what anybody's going to be looking at in determining whether she violated these conditions of supervision, at least is the written piece of paper that's on file in ECF. But we've said that's a nullity. Nobody's going to go back and look at the transcript. I don't understand how that follows from our precedent. Maybe the problem is probation offices are not following our precedent in this area. But clearly we've said repeatedly what controls and what binds and what she's subject to going forward is what was announced in court. And we have in the transcript what was announced in court. And you don't seem to have a problem with her being bound by that, right? Correct. Okay. But, Judge, I can't imagine a case where a probation officer, in deciding whether she's violated her conditions of supervised release, is going back and pulling up the sentencing transcript and reading the sentencing transcript. Yeah, me neither. And comparing it to the written judgment and saying, okay, well. But that's like a jurisdictional problem here and maybe with all of our precedent. But it's not ñ it doesn't explain why, I mean, she's ñ you have appealed something that doesn't seem to, you know, under our precedent is not going to affect her. I suppose the remedy would be an explicit direction to the district court to strike those offending provisions from the judgment, which we said is not part of the process. Which we don't do. I mean, the court has said repeatedly over and over, right, we remand. You don't need an appeal for that. If that's your solution, you go to the district court and say, look, you've made up some nullities here. Please make sure that it reflects your accurate judgment. Yeah. And by the way, probation officers, now you can't rely on this written judgment. You've got to go back and obtain a transcript. How is it not an injury in fact that you have an order from the district court that purports to impose legal obligations on you that you think are legally invalid? I agree. Judge Hydens, I agree. That is an injury. But we agree that's not what binds her. That's not the judgment. We agree that she's bound by the judgment, the written judgment, to the extent that it's consistent with the orally announced conditions. Okay. Thanks. We'd ask the court to vacate the sentence and remand for resentencing. Thank you. Thank you, Mr. Vitrano. I noticed that you are court appointed. I want to thank you for taking on this assignment, which you've handled quite ably in the face of some really difficult questions and some uncertainty in our cases. And I want to thank Ms. Englander, too, for her fine advocacy here this morning. We'll come down and greet you and adjourn for the day.
judges: Albert Diaz, Allison J. Rushing, Toby J. Heytens